CHICAGO—FIRST DISTRICT—OCTOBER, 1914.     331

Ideal Electric Co. v. Penn Mutual Life Ins. Co., 189 Ill. App. 331.

## Ideal Electric Company for use of Violet Stone Ryerson, Appellee, v. Penn Mutual Life Insurance Company, Appellant.

### Gen. No. 19,797.

1. INSURANCE, § 667*—*when finding against suicide sustained by the evidence.* In an action for life insurance where the defense was that the insured committed suicide, a verdict for plaintiff and a special finding that the insured had not committed suicide *held* sustained by the evidence.

2. INSURANCE, § 601*—*presumption against suicide.* In an action for life insurance where the defense is suicide, the plaintiff has a right to invoke the presumption that persons do not ordinarily take their own lives.

3. APPEAL AND ERROR, § 1403*—*conclusiveness of special finding.* A special finding of fact by a jury is binding upon the person against whom it is found, where no action was taken in the trial court to have it set aside.

4. INSURANCE, § 214*—*when answer to question in application not false.* The answer "none" to a question in an application for insurance: "Have you had insanity * * * or any other disorder of the brain or nervous system," *held* not false though the evidence showed that the applicant had complained of dizziness and deafness in connection with a perforated eardrum.

5. INSURANCE, § 214*—*when portion of answer to question in application immaterial.* Where a question in an application for insurance was whether the applicant had had a long list of ailments which included "ear discharge" and the answer was: "None except slight ear discharge from perforated drum, right, in early childhood. No trouble now for 20 years, though drum is still perforated," *held* that the words of the answer "none except slight ear discharge" was a complete answer to the question, and that the following portion of the answer was immaterial as not being responsive to the question.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed October 13, 1914.

HOLDOM, MANIERRE & PRATT, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

SHEPARD, McCORMICK & THOMASON and ROSE, SYM-
MES & KIRKLAND, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the
court.

On May 16, 1910, John A. Ryerson came to his death
by falling through the open light well from the thir-
teenth floor to the ground floor of the Chamber of Com-
merce building in Chicago. Whether with suicidal
intent he jumped over the guard railing on the thir-
teenth floor or involuntarily fell over it into the light
well is in dispute.

At the time of his death Ryerson was insured by
the defendant, a life insurance company. The policy
was dated November 30, 1909, and contained a pro-
vision that in case of the suicide of the insured within
one year from the date of the policy the Company's
liability would be limited to the amount of premium
paid. This suit is for the full amount of the insur-
ance named in the policy, and upon the trial the jury
returned a verdict awarding plaintiff this amount.
The jury was also required to find specially on a ques-
tion of fact submitted, which was: "Did John A.
Ryerson commit suicide?" and to this the jury an-
swered, "No." From the judgment entered on this
verdict defendant appeals, saying among other things
that the evidence shows Ryerson to have committed
suicide, and as this occurred within one year from the
date of the policy the Company is not liable beyond the
amount of the premium paid.

The testimony as to the occurrence itself is meager.
Shortly after six o'clock in the evening the single eye-
witness saw Mr. Ryerson standing by the railing sur-
rounding the light shaft. This railing is of metal and
is three feet eight inches high. This witness while
momentarily looking elsewhere heard Ryerson give a
loud gasp, as if gasping for breath, and the witness,

attracted by this, turned just in time to see the body go over the railing, as he described it, "like he had been shot out of something." In argument it is attempted to support the assertion that Ryerson purposely jumped over the railing by deductions sought from the position of the body while falling, certain angles of the fall and measurements of distances. As against these circumstances plaintiff, to support its claim, introduced the testimony of medical witnesses to the effect that one with a perforated eardrum, which Mr. Ryerson had, would be subject to dizziness or vertigo, and that the gasping for breath and the direction of his fall would indicate that he had fallen under the influence of a sudden seizure of dizziness or vertigo. In our opinion it cannot be said that either of these variant theories has been established to a degree amounting to a demonstration. However, we can see no reason for saying that the jury was not as fully justified in accepting the theory of the plaintiff as of the defendant as to the conclusion to be drawn from the testimony of the witnesses and the surrounding conditions.

The relevant facts prior to the occurrence appear to be that at the time of his death Mr. Ryerson was about forty-five years of age, was married and had one child about eighteen months of age. Three weeks after his death another child was born. He was a strong man, physically and mentally, an athlete, and was very good in many physical sports. His marriage was a happy one and he seems to have been devoted to his wife and child. He was a man of religious habit, regular in his church attendance and interested in religious questions, a scholarly man, graduate of Columbia University, and a reader. His friends say of him that he was optimistic in disposition, generally looking on the bright side of life, and enjoyed companionship among a large circle of friends. He seems to

have had ample credit at his bank, at one time had been secretary of A. C. McClurg & Company and a stockholder, holding stock of the face value of $27,000, and of an actual value of $42,000. At the time of his death he was financial man and bookkeeper of Charles F. Reed & Company, in which corporation he owned one-half of the stock; and was also a stockholder in and president of the Ideal Electric Company, which seems to have had a growing business. On the morning of the day of his death he parted with his wife and child in his usual manner. In the afternoon he went to the Northern Trust Company vaults, where he kept the papers of Reed & Company, among which were seventy-two leases under his charge. He stayed there until about five o'clock, at which time he exchanged some pleasant remarks with the manager, who knew him well. Another acquaintance, with whom he then met and had some conversation, testified that his apparent frame of mind was normal and that he gave no indication of being downhearted. He was next seen about 5:30 o'clock on the thirteenth floor of the Chamber of Commerce building, where he had occasion to go on business at different times during the day. There is a great deal of evidence and argument concering his financial condition at the time immediately prior to his death, which it is unnecessary to narrate for the reason that it leads to no very definite conclusion as to his financial needs. Certainly it cannot be said to show so clear a condition of financial stress as to impel an inference that any sufficient motive for self-destruction was produced thereby.

The court committed no error in permitting the jury to pass upon all these predisposing circumstances. It was said in *Wilkinson v. Aetna Life Ins. Co.*, 240 Ill. 205, that it was not necessary that the plaintiff prove by an eyewitness that the injuries which caused death

by violent and external means were accidental, but that fact might be established by circumstantial evidence. This case is also authority for our holding that in addition to the facts above related the plaintiff had the right to invoke the presumption that men in the condition in which the evidence showed Ryerson to have been just prior to his injury do not ordinarily take their own lives. In its opinion the court said (p. 212): "While this presumption is a rebuttable presumption and may be overcome by proof, when not rebutted by proof or the circumstances in evidence surrounding the death, such presumption, when taken with the admission that the injuries which caused death were violent and external, is sufficient to require the court to submit to the jury the question whether the injuries which caused the death * * * were accidental or self-inflicted." (See also Fidelity & Casualty Co. of New York v. Weise, 182 Ill. 496.) Considering the testimony before the jury in the light of these authorities, the conclusion of the jury that suicide was not proven must stand.

A further reason is suggested why defendant's contention cannot prevail, in that at its request the jury returned a special verdict that Ryerson had not committed suicide. In many cases it has been held that a special finding of fact by a jury is binding upon the person against whom it is found, unless some action is taken in the trial court to have it set aside. No such action was taken in this case, and no convincing reason is presented why this general rule should not prevail. See *Avery v. Moore*, 133 Ill. 74; *City of Aurora v. Rockabrand*, 149 Ill. 399; *Pennsylvania Coal Co. v. Kelly*, 156 Ill. 9; *Empire Laundry Machinery Co. v. Brady*, 164 Ill. 58; *Illinois Steel Co. v. Mann*, 197 Ill. 186; *Voigt v. Anglo-American Provision Co.*, 202 Ill. 462; *Kuchler v. Stafford*, 185 Ill. App. 199.

It is also claimed as a matter of defense that the

insured made false representations in his application for insurance, and thereby the policy became void. These representations were in response to questions, one of which was: "Have you had Insanity, Apoplexy, Palsy, Vertigo, Convulsions, Sunstroke, Congestion, Inflammation, or any other disorder of the Brain or Nervous System?" and to this the applicant in writing answered, "None." A physician testified that Mr. Ryerson had called on him in 1896 and in 1904 and at that time complained of dizziness and deafness in connection with a perforated eardrum. He had, when a child, dived from a vessel into the sea and ruptured his right eardrum, which had never healed. We are not inclined to hold this as evidence that the answer was false. It is manifest that the ailments listed in the question have reference to some disorder of the brain or nervous system. The language of the question is, "or any other disorder of the Brain or Nervous System." There is no evidence that the dizziness mentioned by Mr. Ryerson to his doctor some years before could, speaking accurately, be such a disorder of the brain or of the nervous system as is contemplated in the question. A doctor testifying for the defendant stated, in substance, that what is called dizziness is a symptom, not a disease; that it may be a symptom of disturbance of the circulation of the brain, or in the nervous system, or of digestion, or a symptom of hardened arteries, or of poison. We are not inclined to read this question and answer as a positive statement that at no time in his life had the applicant ever felt the sensation of dizziness. There is no evidence that the answer was untrue, considering the question as it would ordinarily be understood.

Another representation which is said to be false appears in the question and answer as follows: Question. "14. C. Have you had Appendicitis, Cancer,

or any Tumor, Chronic Diarrhoea, Ear Discharge, Dropsy, Fistula, Gall-stones or Gravel, Renal or Hepatic Colic, Open Sores, Inflammatory Rheumatism, Gout, Syphilis or Stricture, or any Disease of the Liver, Kidneys, or Bladder?'' Answer. ''C. None except slight ear discharge from perforated drum, right, in early childhood. No trouble now for twenty years, though drum is still perforated.'' It is said that there is evidence that applicant suffered from ''ear discharge'' at some period within the previous twenty years, and hence his answer was false. We do not think so. The question is: ''Have you had'' any of a long list of ailments, in which is included ''ear discharge,'' and the answer is plain that he had had none of these ailments except the ear discharge. This is the complete answer to the question. It is not material or responsive that the applicant in his answer volunteered the information that he had a perforated right eardrum in early childhood which had given him no trouble for twenty years although the drum was still perforated. Also, it is to be observed that the words, ''No trouble now,'' are rather indefinite and do not unequivocally state that there has been no discharge.

In this connection it might be said that the forceful argument of defendant's counsel, as to the very excellent physical condition of Mr. Ryerson prior to his death, is hardly consistent with the contention that the representations criticised were material to the risk.

Complaint is made of rulings on evidence and of instructions given by the court, but we see nothing sufficiently prejudicial to require a reversal.

For the reasons above indicated the judgment is affirmed.

*Affirmed.*