Esther T. Blair, Appellee, v. Raphael S. Blair, Appellant.

Gen. No. 44,964.

Heard in the second division of this court for the first district at the December term, 1949. ▮ Opinion filed May 23, 1950. Rehearing denied June 5, 1950. Released for publication June 6, 1950.

Louis S. Gunn and Hadley & Leren, all of Wheaton, for appellant; Charles W. Hadley, of Wheaton, of counsel.

Fred A. Gariepy, of Chicago, for appellee; John Spaulding, of Chicago, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

This is a divorce proceeding brought by plaintiff, Esther T. Blair, against defendant, Raphael S. Blair. A jury returned a verdict finding the issues for plaintiff and against defendant. The chancellor also submitted two special interrogatories to the jury with instructions to the jury to answer the same yes or no. The first interrogatory was: "Has the defendant, Raphael S. Blair, been guilty of extreme and repeated cruelty towards the plaintiff, Esther T. Blair, in manner and form as charged in the complaint filed herein by the plaintiff?" The second interrogatory was: "Was the said defendant, Raphael S. Blair, at the time of the filing of the complaint herein, a resident of the County of Cook?" The jury answered yes as to both interrogatories. Defendant's motion for judgment notwithstanding the verdict and in the alternative a motion for new trial were by the chancellor overruled and

denied, and a decree was entered finding and decreeing, *inter alia,* that defendant was a resident of Cook county at the time of the filing of the complaint and that he was guilty of extreme and repeated cruelty as charged in the complaint. No point is made as to the pleadings. The complaint alleges that plaintiff was an actual resident of the County of Du Page and that defendant was an actual resident of the County of Cook. The complaint charges defendant with extreme and repeated cruelty towards plaintiff and alleges two or more acts of cruelty, the last act occurring on February 14, 1947. The complaint also alleges that the parties separated on February 14, 1947. Plaintiff prays for a divorce and the sole care, custody, control and education of the minor children, and that defendant be required to pay to plaintiff temporary and permanent alimony, support for the children, and attorneys' fees. Defendant filed an answer to the complaint admitting that plaintiff was a resident of Du Page County but denying that he was a resident of the County of Cook and alleged the fact to be that he was then and had been for some time a resident of the County of Du Page. The answer denies that defendant was guilty of the acts of cruelty charged and avers that the separation of the parties occurred without fault on his part.

██ While defendant has filed a lengthy brief he makes but three points in support of his appeal. The first and principal one is that the court erred in not granting his motion for a directed verdict at the close of all of the evidence, and in not granting his motion for judgment notwithstanding the verdict. This contention is based solely upon the ground "that there is no evidence in this record, together with all reasonable inferences from the evidence, in its aspect most favorable to the plaintiff, showing that the defendant was a resident of Cook County at the time of the filing of the

complaint in the above entitled cause and the service of summons upon the defendant. That the court, by reason thereof, did not have jurisdiction of the subject matter of this proceeding.'' Defendant does not question the special finding of the jury that defendant had been guilty of extreme and repeated cruelty towards plaintiff as charged in the complaint. In fact, defendant, in his written motion for a new trial, did not question that special finding of the jury and therefore was conclusively bound by it. (See *Szalacha v. Landsman*, 325 Ill. App. 691; *Boettger v. Miller*, 338 Ill. App. 206; *Ideal Electric Co. v. Penn Mutual Life Ins. Co.*, 189 Ill. App. 331, 335, and cases cited therein; *Voigt v. Anglo-American Provision Co.*, 202 Ill. 462, 466.)

In passing upon defendant's motion for a directed verdict at the close of all the evidence and upon his motion for judgment notwithstanding the verdict, the chancellor was bound by the following settled rules:

'' ' ''A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. *The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration.* In reviewing the action of the court of which complaint is made we do not weigh the evidence,—we can look only at that which is favorable to appellant. *Yess v. Yess*, 255 Ill. 414; *McCune v. Reynolds*, 288 id. 188; *Lloyd v. Rush*, 273 id. 489.'' (*Hunter v. Troup*, 315 Ill. 293, 296, 297. [Italics ours])' (*Rose v. City of Chicago*, 317 Ill. App. 1, 12. See, also, *Mahan v. Richardson*, 284 Ill. App. 493, 495; *Thomason v. Chi-*

*cago Motor Coach Co.,* 292 Ill. App. 104, 110; *Wolever v. Curtiss Candy Co.,* 293 Ill. App. 586, 597; *Olympia Fields Club v. Bankers Indem. Ins. Co.,* 325 Ill. App. 649, 656, 657; *Panella v. Weil-McLain Co.,* 329 Ill. App. 240 . . . .)

" . . .

"The foregoing rules also apply to the contention that the court erred in denying defendant's motion for judgment notwithstanding the verdict." (*Roadruck v. Schultz,* 333 Ill. App. 476, 480, 481, appeal denied by Supreme Court, 399 Ill. 628.)

■■ While defendant admits the binding force of the foregoing rules, he fails to observe them in his argument upon the instant contention, wherein he, constantly refers to parts of defendant's testimony that he deems favorable to his contention and emphasizes and repeats certain testimony that he claims proves his contention that he did not intend to give up his residence in Du Page county. He argues that a letter he wrote to plaintiff on February 18, 1947, has an important bearing upon his intent. This letter was composed with the aid of his attorney and with a view to protect his "legal rights." It was clearly a self-serving letter. Defendant, in his argument, ignores important testimony that supports the special finding of the jury that defendant at the time of the filing of the complaint was a resident of the County of Cook. As he did not, in his written motion for a new trial, question the correctness of the special finding of the jury that he was a resident of Cook county at the time of the filing of the complaint, he is conclusively bound by that finding *if there is any evidence fairly tending to prove the allegation in plaintiff's complaint that defendant at the time of the filing of the complaint was an actual resident of the County of Cook and State of Illinois.* The material question for us to decide is, Is there any such evidence? Plaintiff testified that on the evening de-

98

fendant left the Hinsdale home he went upstairs, packed, and took everything that he had, in three large packages and one small package, except those articles that were in the laundry and at the cleaners; that after he had packed defendant came into the living room and *told her that he was going to leave and was going to the Pearson to live; that he intended to sell the house and would make arrangements and let her know;* that she would have to discharge the laundry-woman and live in accordance with his position; that she said to defendant that the Pearson Hotel was a rather expensive place for him to stay, "and he said I would have to cut down drastically because he would have to live in accordance with his position"; that he then took the packages and left. Defendant testified that he then went to the Pearson Hotel, after he had "discussed the matter with Mr. Cook," and that he lived there from the early morning of February 17 to March 2 is admitted. It further appears from defendant's testimony that he went to that hotel because he had lived there for a period of nine months some years before. That he did not then intend to return to the home is shown by the fact that he agreed with plaintiff that she and the children should occupy the home and that he would leave and go to the Pearson to live. Defendant's statement to plaintiff that he intended to sell the house strongly rebuts his position that he intended to return to the home. The Pearson Hotel is located at 190 East Pearson street, Chicago, Cook county, Illinois. Defendant testified that after he went to the Pearson Hotel the hotel notified him that he had a week to stay there and after that he must move because of federal rules; that he thereupon, near the end of the week, made arrangements to move to the Croydon Hotel; that he was then advised by the Pearson Hotel that they would grant him a further extension, and he continued to reside at the Pearson. In the self-serving

letter to which we have referred defendant stated: "The Pearson Hotel, as you know, is at 190 East Pearson Street, Chicago. *If I have to move* I will let you know where I am staying." (Italics ours.) The following occurred during the direct examination of defendant: "Q. Where did you write the letter and where did you make the copy? A. I made it in Mr. Cook's office. Q. Mr. Cook was sitting there? A. Yes sir. Q. He dictated the letter? A. We wrote it together. Q. You wrote it together; you collaborated? A. Yes sir. Q. And you and Mr. Cook—did you tell Mr. Cook you needed help in writing the letter? A. Yes sir. Q. *Did you tell Mr. Cook you wanted to protect your legal rights? A. Yes sir.*" When defendant was served with summons in the instant case, on February 21, 1947, he was still living at the Pearson Hotel. Defendant testified upon direct examination that *after he was sued for divorce* he talked with a druggist in Hinsdale about getting a room there, and it appears that he moved to Du Page county before his answer to the complaint was filed. Defendant contends that he did not abandon his home in February, 1947, and that "finally, late Sunday evening, after the wife had refused to stay in the house if he stayed there, and had spent one night with the children out of the house because he was there, he said he did not want his home disturbed and did not want the children taken out of their beds and did not want the family upset, and that he thought it best that he should go"; that he then sought the advice of his lawyer and after getting it he went to the Pearson Hotel.

Plaintiff testified that on February 14, 1947, she told defendant that if he stayed at the house she would go, "and I did the same on the 15th day of February, 1947, and also on the 16th day of February, 1947. I told Mr. Blair if he remained in the house, I and the children would leave. He did not say that rather than

100

see the children and myself leave, he would leave. He said Mr. Cook had persuaded him to leave, that he felt it was best and he would leave.'' It is a reasonable inference from the evidence that plaintiff's attitude in insisting that either defendant leave the home or that she and the children would leave the home was actuated by a fear that defendant would harm her or the children. While, as we have heretofore stated, defendant does not question the special finding of the jury that he was guilty of extreme and repeated cruelty towards plaintiff as charged in the complaint, we deem it proper to briefly refer to the occurrence that happened on February 14, 1947, Valentine's Day, as it tends to explain plaintiff's attitude. Mary Jane Blair, the elder daughter of the parties, was then about sixteen years of age. She and plaintiff testified that on that date defendant violently assaulted and seriously injured plaintiff; that the daughter saw defendant ''pitching and tossing her mother all over the room'' and she tried to get defendant away from her mother; that defendant then started to ''throw'' the daughter around; that defendant yelled at plaintiff, ''I will kill you,'' swore at her and used foul language; that when defendant backed plaintiff against the door and was pushing her hard the daughter thought that her mother was ''passing out'' and she picked up a candlestick from the table and hit defendant over the head with it a few times until he released plaintiff. The testimony of plaintiff and the daughter is to the effect that defendant's assault upon plaintiff was unprovoked and unjustified.

After a careful examination of the record we are satisfied that there is evidence in the record that fairly tends to prove that defendant at the time of the filing of the complaint was an actual resident of the County of Cook and we hold, therefore, that there is no merit in the instant contention. The chancellor,

101

in passing upon the instant contention, and the jury, in passing upon the question of residence, undoubtedly took into consideration the fact that defendant in all of his movements was protecting his "legal rights" through the aid of his attorney. Defendant emphasizes the fact that his stay at the Pearson Hotel was short. In *Hill v. Hill,* 166 Ill. 54, the wife had lived in Chicago only eight days when the bill for divorce was filed and the husband contended that that fact was sufficient to overcome her statement that she was a resident of Chicago. There the wife testified that her residence was in Chicago and that she was working in Chicago at a place on LaSalle avenue. The Supreme court stated (p. 55): "The question of residence, in its legal significance, is not necessarily to be determined by the length of time one has lived in a particular jurisdiction. The real inquiry here is, did appellee go to Chicago in good faith, with the intention of permanently residing and of carrying on business there? *Way v. Way,* 64 Ill. 406; *Derby v. Derby,* 14 Ill. App. 645." In *Routt v. Barrett,* 396 Ill. 322, the court stated (p. 344): "Residence ordinarily means that a person has his home in a particular place. This involves the question of intent with which he is staying in that place. If a person goes to a place with the intention of remaining for a limited time, although in point of fact he may remain for a year or more, still this does not constitute him a resident. It is his intent accompanied with his acts, and *not the lapse of time,* which determines whether he is a resident of the particular place." (Italics ours.) Defendant made no attempt to obtain a room in Hinsdale until after this suit was filed in Cook county. Then, presumably acting upon the advice of counsel, he obtained a room at the residence of a druggist in Hinsdale and moved to Du Page county before his answer to the complaint was filed. It is a reasonable inference from the evidence that this move was intended to aid

a defense of lack of jurisdiction. In view of all the evidence the trial court properly treated the question of jurisdiction as one of fact for the jury to determine. Defendant did not object to the action of the chancellor in submitting to the jury the special interrogatory: "Was the said defendant, Raphael S. Blair, at the time of the filing of the complaint herein, a resident of the County of Cook?" and the jury answered yes to this interrogatory; nor did he question this special finding of the jury in his motion for a new trial. We may add that the jury were fully instructed as to the law bearing upon the subject of residence. It is clear that plaintiff in filing her complaint in Cook county did not intend to take an unfair advantage of defendant. He was certainly living in Cook county when he was served with summons, and his place of business was located there.

The second point raised by defendant is that the verdict of the jury is against the manifest weight of the evidence. This contention relates *solely* to the question of jurisdiction, and in support of it defendant insists that he has a right to raise this question because the chancellor after verdict passed on a motion for a new trial and overruled it, and therefore, on appeal, this court determines whether the verdict of the jury is against the manifest weight of the evidence, and defendant contends that an examination of the record clearly indicates that the verdict of the jury is against the manifest weight of the evidence and therefore the chancellor erred in not granting defendant's motion for a new trial. In support of this contention defendant cites *Read v. Cummings,* 324 Ill. App. 607, 609, but in that case there was no special finding of the jury. Here there was a special finding of the jury that defendant was a resident of Cook county and, as we have heretofore stated, defendant in his motion for a new trial failed to object to that special finding and is,

therefore, conclusively bound by that finding if there is any evidence fairly tending to prove the allegation of the complaint that defendant at the time of the filing of the complaint was a resident of the County of Cook and State of Illinois, and we have heretofore held that there was such evidence.

 The third and last point raised is that the court erred in not granting defendant's motion to withdraw a juror, declare a mistrial, and continue the cause. The only ground urged in support of this point that deserves an answer is the so-called arsenic testimony given by the daughter, Mary Jane. She testified that she observed defendant reading an article in an encyclopedia on arsenic; that he subsequently took drinks to plaintiff and plaintiff after taking the drinks became ill. After the evidence of Mary Jane was concluded counsel for plaintiff asked leave to file an amendment to the complaint which would allege an attempt by defendant to take the life of plaintiff by poisoning, "causing her to become ill for a long period of time." *Counsel for defendant objected to the amendment as coming too late.* The trial court then interrogated attorney for plaintiff to ascertain what additional proof plaintiff had that plaintiff was poisoned and whether the doctor who attended plaintiff would testify that she was poisoned, to which interrogatory counsel responded that he did not think the doctor would say that. To quote from defendant's brief: "Thereupon, the [counsel for] plaintiff withdrew his motion to amend the complaint and the court ordered that the testimony given on the question of arsenic and poisoning should be stricken." Defendant contends that the damage had already been done and that the order of the chancellor striking all of that evidence "could not strike such information from the minds of the jury." Counsel now argues that defendant was seriously injured by the aforesaid testimony of Mary

104

Jane. A study of the record satisfies us that the instant argument is an afterthought. The record shows that counsel at the time the testimony was given made no motion to withdraw a juror, declare a mistrial and continue the cause, and that he did not even make a motion to strike the evidence. After the chancellor had interrogated counsel for plaintiff the evidence was stricken by the chancellor *of his own volition.* The record does show that after plaintiff rested counsel for defendant made a motion to withdraw a juror, declare a mistrial and continue the cause on the ground that "counsel has repeatedly referred and made statements into the record of proceedings before JUDGE SABATH of an adjudication before JUDGE SABATH, and a number of extraneous matters that have no place in this record here and he has made statements outside of the record, all of which were prejudicial and we can't expect to have a fair trial before this jury with that condition in the record and for that reason I ask that a juror be withdrawn and a mistrial declared and the cause continued." It will be noted that counsel did not even consider the testimony of Mary Jane important enough to urge it in support of the motion. *That evidence bore solely upon the question of extreme and repeated cruelty,* and had no bearing on the question as to whether defendant was a resident of the County of Cook at the time of the filing of the complaint. As defendant does not, indeed, cannot, question the special finding of the jury that defendant was guilty of extreme and repeated cruelty, we fail to see how the evidence of Mary Jane, that was stricken, could have seriously prejudiced defendant. Plaintiff's attorney insisted that the evidence was competent upon the theory that it showed *animus* on the question of cruelty. ". . . general misconduct which discloses the animus of the accused in the commission of the specific acts charged may be shown in corroboration of the

proof of the acts charged, (*Westphal v. Westphal,* 81 Minn. 242, 83 N. W. 988) . . . ." (*Field v. Field,* 319 Ill. 268, 270, 271.) "The relations of the parties, their conduct and manner of life, are therefore deemed material, and *evidence of conduct and acts outside of those specially alleged may be received as explanatory,* and as giving weight and credence to the specific charges relied on and set up in the pleadings. 1 Bish. Mar. & Div., Sec. 727; 2 Bish. Mar. & Div., Sec. 658; *Whispell v. Whispell,* 4 Barb. 217." (*Segelbaum v. Segelbaum,* 39 Minn. 258, 260, 261.) "Any willful misconduct of the husband which exposes the wife to bodily hazard and intolerable hardship and renders cohabitation unsafe is extreme cruelty." (*Lipe v. Lipe,* 327 Ill. 39, 43.) In *Teal v. Teal,* 324 Ill. 207, 221, 222, the court said: "It was proper to show the action of the parties toward each other by evidence of their acts, and the evidence of the plaintiff in error's relation to the insanity proceeding should have been admitted. *The entire relationship of the parties is material to characterize or explain their actions.*" (Italics ours.) Defendant was contending that plaintiff, by her attitude in refusing to live in the home if defendant lived there practically drove him from his home, and there is force in plaintiff's contention that the evidence in question might have been properly admitted to explain the attitude of plaintiff. We hold that the chancellor did not err in denying defendant's motion to withdraw a juror, declare a mistrial and continue the cause.

Defendant has had a fair trial and the decretal judgment of the Superior court of Cook county should be and it is affirmed.

*Decretal judgment affirmed.*

Friend, P. J., and Schwartz, J., concur.