**Randall L. Loveless, Plaintiff-Appellee, v. Mary L. Loveless, Defendant-Appellant.**

**Gen. No. 11,150.**

Fourth District.

August 31, 1970.

J. Waldo Ackerman, of Springfield, for appellant.

Phelps & Russell, of Carlinville (John W. Russell, of counsel), for appellee.

SIMKINS, J.

The Plaintiff, Randall L. Loveless, and Defendant, Mary L. Loveless, were married October 15, 1960, and on April 5, 1968, the Plaintiff filed suit for divorce on the grounds of mental and physical cruelty. The parties had been living separate and apart since December 3, 1967.

The defendant filed a counterclaim seeking a decree of separate maintenance, and the counterclaim was later amended to include a prayer for a decree of divorce on the grounds of physical and mental cruelty.

The trial court granted plaintiff divorce on the ground of mental cruelty, awarded custody of the children, Lance age 6, Lisa age 5, and Bruce age 2, to the plaintiff, and allotted alimony in gross to defendant in the sum of $90,000.

Defendant urges here that the plaintiff failed to establish the grounds for divorce. The plaintiff's evidence was that the defendant cursed him, threw things at him, was subject to repeated temper tantrums, endeavored to tear up the furniture, broke windows in the family home, stated that she did not want to take care of their children, cursed in front of the children, showed them little affection, and caused them to be hysterical, nervous and upset, that she had no control over her temper, and often displayed these characteristics in public. The plaintiff testified that when defendant became violent during her temper tantrums, he would restrain her by holding her arms. He denied that he ever struck or injured defendant.

Defendant testified that she was in love with her husband until she consulted with a psychiatrist, Doctor

299

Hempel, in December of 1968, after which consultation she was no longer in love with him, that she did not break windows or throw things or curse plaintiff, that he was guilty of physical cruelty in that he put his hands over her mouth in a "suffocating manner," never showed her any affection, that he struck her, leaving marks on her arms and neck, knocked her head against a cabinet and gave her a black eye. She also testified that he stated he wanted a divorce so that he could marry again.

██ These varying versions of the marital relationship were supported by witnesses called by the respective parties, and the testimony as above indicated, was in total conflict and contradiction. Thus were posed the traditional questions of fact and credibility for the trier of fact. "Whether certain acts will constitute . . . mental cruelty still depends upon the total factual background surrounding the conduct under question. This includes the particular emotional and personal makeup of the parties, and the varying circumstances under which any of the incidents occurred that may have given rise to the acts." (Stanard v. Stanard, 108 Ill App2d 240, 248, 247 NE2d 438.) The trial judge found the facts in favor of the plaintiff and there was ample evidence upon which to base the decree for divorce on the ground of mental cruelty. This finding is not clearly and manifestly against the weight of the evidence and will not, therefore, be disturbed on review (Fox v. Fox, 9 Ill2d 509, 516, 517, 138 NE2d 547).

██ The defendant also urges that she was "mentally ill" at the time of the commission of the acts upon which the trial court predicated its finding of mental cruelty, and this presented an issue to be resolved by the trier of fact. The record discloses that defendant had been undergoing psychiatric care, had been hospitalized on several occasions and had been given shock

300

treatments. At the time of the institution of the original action for divorce, the court appointed Doctor Frank Shobe as an examining psychiatrist, and his report advised the court that she was suffering from manic-depressive disease which was in remission. That she was capable of standing trial and was mentally competent, but that in view of her past history and unstable behavior, she was not capable of being an adequate mother to the children. In support of her claim, defendant called Doctor Fitzgerald, a clinical psychologist, who had examined the defendant. He found her I. Q. to be "bright-average to superior," that her personality tests were within normal range, that she was within normal limits in areas of depression and paranoia. That her Bender-Gestalt test was almost perfect, and that no test administered by him showed manic depressive symptoms, and that she had no personality problems.

Doctor Warren B. Hempel, a psychiatrist, called by defendant as a witness, had examined her and had access to her previous medical history. He testified that in October of 1968, when he examined her, she was functioning in a normal range, that if she had ever been a manic depressive she was in remission, that he did not consider her a manic depressive and that her history was not that of a manic depressive. In addition, lay witnesses expressed contradictory opinions concerning her mental condition during the time in question. There is sufficient evidence upon which the trial court could have based a conclusion, as it did, that defendant was legally responsible for her actions during the marriage.

■ Defendant also urges that plaintiff failed to prove the effect upon him of her conduct. However, the record discloses plaintiff's evidence to be that he was affected to the point that he could not apply his mind to the conduct of his extensive business affairs, that he took aspirin continually, that he was worried about the

health and welfare of the children, that he was unable to make the decisions required in his business from day to day and that his life was a constant turmoil.

Defendant also maintains that she should have been awarded custody of the minor children. Here again, the testimony was in complete contradiction. Defendant and her witnesses testifying that she was a loving, kind and attentive mother, while plaintiff and his witnesses testified to the contrary. There must be a positive showing to deny the mother of young children the right to custody. (Nye v. Nye, 411 Ill 408, 414, 105 NE2d 300), but as the court observed in Wolfrum v. Wolfrum, 5 Ill App2d 471, 475, 126 NE2d 34, "This is not an inflexible rule, however, since the welfare of the child is the prime consideration." There is no evidence in this record involving moral turpitude on the part of the defendant, but there was evidence which amounted to a positive showing that the interests of the children would be best served by the award of the custody to the plaintiff and this showing is sufficient to support the award. (Nye v. Nye, supra.) The trial court gave careful attention to the testimony and awarded custody based upon the controlling factor of consideration for the welfare of the children. Temporary custody was also awarded to the plaintiff and the testimony was that during the absence of the mother from the home, the children were much more relaxed, disciplined, and that they were happy and contented, but that during brief visitations with the mother they again became nervous and upset. We are not disposed to disturb the award of custody. Visitation privileges granted to the defendant are indeed minimal, but remain under the control of the court and are, therefore, subject to change as circumstances and actual experience dictate, and indeed the trial judge indicated that the visitation was dependent upon the manner in which it worked out.

Defendant also urges that the "wife without fault" is entitled to more than $90,000 alimony in gross. At the time of trial defendant, who was twenty-nine years of age, and is a registered nurse, was employed full time in the medical division at Memorial Hospital in Alton, Illinois, earning approximately $400 per month.

Here the trial court found that defendant was not without fault, and plaintiff urges in his brief and argument that the award is reasonable and should be affirmed. The question of the propriety of the award of alimony in gross, as contrasted to periodic payments, is not before this court. Both parties urged the trial court to dispose of the alimony question by an award in gross, or by some method other than periodic payments, and the only question before us involves the adequacy of the award. Plaintiff is a man of substantial means, his land holdings are extensive and his principal source of income is derived from the purchase and sale of feeder cattle. His financial statement furnished to the Carlinville State Bank under date of April 1, 1968, disclosed his net worth as, of that time, to be slightly in excess of $500,000.

Defendant's testimony as to her needs was quite limited. She testified that she needed a house, a car, furniture and money to maintain the house and felt that she should have $260,000. She stated that she felt her husband was worth approximately $700,000 and she was entitled to some of this money, and this was the extent of her testimony as to needs.

The only evidence as to plaintiff's annual net income is in the form of a 1967 Federal income tax return and that disclosed his net income, for that year, to be in the sum of $17,855.27.

The determination of the amount of alimony to be awarded is a decision which rests within the sound discretion of the trial court, and the award is not to be

set aside unless it is contrary to the manifest weight of the evidence (Hoffmann v. Hoffmann, 40 Ill2d 344, 349, 239 NE2d 792). Here the trial court found the defendant to be at fault, and after reviewing the record we are not disposed to say that the trial court unreasonably exercised its discretion. The court's decree provided that the $90,000 award was to be paid as follows: $30,000 within three weeks of the decree of the court and $6,000 per year until the balance of the award was paid in full. This award was substantial and, in our view, adequate.

Defendant also urges that she was entitled to one-half of the Scott County farm which had been sold under contract for deed for $180,000, claiming that she was a part owner of that property. The record irrefutably belies the contention of ownership. The deed conveying the farm to plaintiff was introduced into evidence. The conveyance was made August 17, 1961, and there is no evidence that he thereafter conveyed any interest to the defendant. Defendant's sole basis for her contention that she owned an interest in the farm at the time of the sale, was that she joined in the contract for deed and was designated as a "seller." It is abundantly clear that her only interest in the premises was that of an inchoate right of dower.

The decree of the trial court is affirmed.

CRAVEN, P. J. and TRAPP, J., concur.