DONALD McCARREL, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, *v.* CAROL I. McCARREL, Defendant and Counterclaimant-Appellee and Cross-Appellant.

Fourth District   No. 13634

Opinion filed May 16, 1977.

Jon E. Acuff, of Pittsfield, for appellant.

Lewis, Blickhan, Tucker & Longlett, of Quincy, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

On February 23, 1971, plaintiff Donald McCarrel sued defendant Carol McCarrel for divorce in the Circuit Court of Pike County on grounds of mental cruelty. Defendant counterclaimed for divorce on the same grounds. After a hearing, a divorce was awarded to plaintiff. Upon defendant's appeal, this court in *McCarrel v. McCarrel* (1974), 17 Ill. App. 3d 1034, 309 N.E.2d 252, reversed and remanded with directions that a judgment be entered in favor of defendant on the complaint and a new trial be granted on her counterclaim. At retrial, which ended July 15, 1976, defendant was awarded a divorce, certain property as alimony in gross, a judgment for back support and attorney's fees. Less than 30 days after the entry of the decree, the trial court amended its decree to include a finding that defendant had no right to the proceeds from a certain contract for the sale of real estate. Plaintiff appeals from each grant of relief to defendant

and defendant cross-appeals from the finding concerning the proceeds from the contract.

Plaintiff contends that the trial court erred because: (a) the findings that plaintiff was guilty of mental cruelty and that defendant had not condoned any such conduct were both against the manifest weight of the evidence; (b) the award of attorney's fees was excessive in amount and improper to the extent that fees were awarded for her prosecution of the first appeal; and (c) no showing of need was made for the various orders of support and, in any event, the orders were excessive in amount. Defendant maintains that the court's finding that she had no interest in the proceeds of the real estate contract was contrary to the manifest weight of the evidence as aided by the presumption in favor of a gift and that, in any event, the court erred in making the finding because plaintiff had not pleaded any equity in the contract.

■■■ We consider first the award of the divorce itself. Conduct of one spouse that causes the other spouse embarrassment, humiliation and anguish which renders the life of the other spouse miserable and unendurable constitutes mental cruelty. (*Stanard v. Stanard* (1969), 108 Ill. App. 2d 240, 247 N.E.2d 438.) The parties were married September 3, 1968. Evidence was presented that thereafter plaintiff committed several unprovoked physical acts of cruelty upon defendant, once breaking her jaw. Evidence was also presented of threats he made to her and of scurrilous remarks he made about her in the presence of others. At the times of many of these acts and remarks, he was said to be intoxicated. Some evidence was also presented of his failure to support her. Such conduct would obviously cause her embarrassment, humiliation and anguish. Because of the repetition of this conduct, the trial court could have determined that, in toto, this conduct made defendant's life miserable and unendurable. Although not all of the acts of mental cruelty referred to were properly pleaded, those that were not may be considered to explain and give weight to those that were properly pleaded. (*Blair v. Blair* (1950), 341 Ill. App. 93, 93 N.E.2d 95.) The finding that plaintiff had been guilty of mental cruelty was not contrary to the manifest weight of the evidence.

A closer question is presented by plaintiff's claim that he had proved this affirmative defense of condonation. The evidence is undisputed that prior to February 18, 1971, defendant had always returned or continued to live with plaintiff after each act of cruelty and continued to perform her household functions and to have marital relations with plaintiff. She also testified that she continued to love plaintiff until that date. Clearly condonation until then had been proved. Condoned acts of mental cruelty are revived, however, by subsequent acts of mental cruelty. (*Deahl v. Deahl* (1973), 13 Ill. App. 3d 150, 300 N.E.2d 497.) Defendant

testified that for several months prior to February 18, 1971, plaintiff had not given her sufficient monetary support and that on that date she appeared at his place of business and demanded that he give her $40. Upon his refusal, she told him that she was going to put his clothes out of their house. Later that day she did so. According to defendant, when plaintiff came home that evening he was intoxicated. Upon arrival, he entered the house, grabbed her around the shoulders and started to choke her, ·whereupon she sprayed him with mace. Defendant testified that she and her two daughters by a previous marriage were the only persons home at the time. Only one of the daughters testified. She substantiated her mother's testimony.

■■ Plaintiff, on the other hand, stated that when he stepped inside the door she immediately sprayed him with mace. He denied any threats or choking. Two persons who were Jehovah's Witnesses testified that they were visiting in the house at the time and confirmed plaintiff's version of the occurrence. One of them testified that he later drove plaintiff in his car and did not think plaintiff was intoxicated. The county's State's attorney and sheriff both saw plaintiff later and they also did not think he was intoxicated. Although defendant's version of this last episode was strongly disputed, we do not determine that the trial court's finding in favor of defendant on this issue to be contrary to the manifest weight of the evidence.

■■ In total the trial court awarded defendant's attorney's fees and expenses in the amount of $13,853.25. Because of the length of the litigation and the investigation defendant's counsel was required to make to determine why plaintiff's assets had greatly diminished during the litigation, we do not find these fees to be excessive. A substantial portion of this award was allowed upon remand for the prosecution of the original appeal. Plaintiff contends that the trial court can award fees and expenses for the defense of an appeal but cannot properly do so for the prosecution of an appeal. He relies on the language of section 15 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 16), which expressly states that in case of an appeal in a divorce case, the trial court "may grant and enforce the payment of such money" for the "defense" of the party in whose favor the order appealed was entered. He argues the statutory wording indicates that the trial court may not, at any time, award fees and expenses for the prosecution of an appeal.

Statements in *Buehler v. Buehler* (1940), 373 Ill. 626, 27 N.E.2d 466, and *Hall v. Hall* (1975), 25 Ill. App. 3d 524, 323 N.E.2d 541, support plaintiff's position. In *Buehler* the fees were disallowed because they were awarded by the appellate court which had no authority to award any fees and in *Hall* the fees were disallowed because they had been awarded for appeal of a post-decretal order. *Holmstedt v. Holmstedt* (1943), 383 Ill. 290, 49

N.E.2d 25, and *Bramson v. Bramson* (1958), 17 Ill. App. 2d 87, 149 N.E.2d 399, are more directly in point. In *Holmstedt,* although the opinion made no reference to section 15, which was then in effect, the court ruled that the appellant who prevailed was entitled to fees. In *Bramson,* the court ruled that the portion of section 15 relied upon by plaintiff spoke merely to the award of fees and expenses prior to appeal, but that the general provisions of the paragraph with reference to the award of fees permitted such an award by the trial court after the appeal had been completed and the case remanded as was the case here. We consider the precedent of *Holmstedt* and *Bramson* to be the controlling precedent. The award of attorney's fees is affirmed.

The remaining issues can best be considered together. Prior to the marriage plaintiff owned a farm tract of approximately 80 acres. In March of 1969, the farm was sold for $59,100 pursuant to a written contract providing for periodic payments. That document described plaintiff and defendant as "sellers" and both signed in that capacity. As a down payment of $8,000, "sellers" agreed to accept conveyance of a dwelling house and lot at Hull, Illinois. The contract further provided for 20 annual payments to be made to "sellers." A special principal payment of $7,100 was to be made on September 15, 1982. This payment paralleled a final payment which was to be made on that date upon a mortgage which encumbered the premises. The contract provided for that payment to be made directly to the mortgagee in discharge of the mortgage. The contract provided that "seller" would make the other mortgage payments which were required by the mortgage to be paid annually at the rate of $700 in principal plus interest. At the time of trial, plaintiff was 63 years of age, unemployed and drawing $222.10 per month in social security benefits. There was no showing in the evidence that defendant then had any assets of substance other than corporate stock with a value of less than $1000 and the interest in the dwelling at Hull and the real estate contract. In 1970, plaintiff had given a financial statement showing him to have a net worth of $84,700. He introduced evidence of various bad investments he had made in the interim. Defendant was 39 years of age at the trial, unemployed and with no assets except her interest in the house and real estate contract.

■■ Defendant has cross-appealed the ruling that she had no interest in the real estate contract. Evidence showed that she had been receiving one-half of the payments for awhile, but upon the parties separation, plaintiff kept all the payments. Evidence was also introduced that defendant had made statements to others indicating that he had given defendant a one-half interest in the payments to be made. Plaintiff denied he had intended to make a gift and testified that she was made a party to the contract solely to bind her to release her inchoate dower interest. In

any event, the trial court's ruling was a determination of equities in the property made pursuant to section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18). No such award can properly be made unless the party to whom the award is made alleges the claim of these special equities in his pleading. (*Lawyer v. Lawyer* (1974), 19 Ill. App. 3d 571, 312 N.E.2d 7.) Since plaintiff made no such allegation here the trial court's determination that defendant had no interest in the contract must be reversed.

At a hearing on June 13, 1974, after the remand from the first appeal, the trial court found plaintiff to be in arrears on temporary alimony previously ordered and entered judgment against him for $3,782. The court also ordered plaintiff to begin paying temporary alimony at the rate of $75 per week. At trial, the court found plaintiff to be $4,125 in arrears on that order and also entered a judgment against him for that amount. The relative situation of the parties fully justified these judgments. They are affirmed.

■■ The court ordered plaintiff to convey to defendant all interest in the dwelling house and gave her all of the furniture and fixtures as alimony in gross. The decree also entered or confirmed judgments against plaintiff for temporary alimony in default and attorney's fees and expenses totaling over $21,000 plus interest. The judgments were made a lien against the proceeds from the real estate contract. Plaintiff was ordered to apply these proceeds first to payment of the mortgage and then to the reduction of the judgments. Were it not for the vague explanation that plaintiff gave for the disappearance of his assets and the question that might be raised as to the validity of his inability to find work, the award of the alimony in gross would seem to be unduly harsh. The trial judge heard the evidence and was in a superior position to determine the validity of plaintiff's claimed plight. The trial court's decision, however, was based upon the assumption that plaintiff was entitled to all of the proceeds from the real estate contract. By our ruling, that assumption has been invalidated. The judgments against him are now well in excess of his interest in the contract. If he is telling the truth, he has only social security benefits from which to live. Since defendant is only 39 and has worked in the past, her work potential should be considered equal to plaintiff's. Under the posture of the case resulting from our ruling concerning the contract proceeds, the award of plaintiff's interest in the Hull dwelling has become excessive and must be set aside.

Various amendments will need to be made to the decree upon remand. In view of our ruling that plaintiff is not entitled to all of the real estate contract proceeds, one-half of the mortgage payments upon the contract real estate should be chargeable to defendant's share of the proceeds. The trial court should make such order as it deems necessary with reference to

the receipt of the contract payments to protect defendant's interest in her one-half share and her lien upon plaintiff's interest. The trial court may also, in its discretion, order that the judgments entered become a lien upon plaintiff's interest in the Hull dwelling property.

All judgments from which appeal is taken are affirmed except that the portion of the decree finding plaintiff to be the sole owner of the proceeds from the real estate contract and the portion of the decree awarding defendant all of plaintiff's interest in the dwelling property are reversed. The case is remanded to the Circuit Court of Pike County for the entry of such orders as are consistent with this opinion.

Affirmed in part, reversed in part, remanded with directions.

CRAVEN, P. J., and HUNT, J., concur.