ELAYNE MORRIS, Plaintiff-Appellee, *v.* LEO MORRIS, Defendant-Appellant.
First District (2nd Division)    No. 77-1495

Opinion filed March 13, 1979.

Martin Tiersky, of Lincolnwood, for appellant.

Schiller & Schiller and Bass & Bass, both of Chicago (Donald C. Schiller, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

The appeal in this divorce action stems from two principal issues: whether plaintiff proved that defendant was guilty of extreme and repeated mental cruelty towards her; and whether the judgment for divorce and addendum thereto, entered on August 16, 1977, accurately reflected the oral settlement agreement entered into between the parties and incorporated into the judgment.

For the reasons hereinafter stated, we affirm.

The parties were married on February 14, 1960, and had two children, who had attained the ages of 16 and 17 years respectively at the time of the appeal. The history of this marriage included a separation in 1971; a divorce suit filed later in that year; and a reconciliation thereafter lasting until January 25, 1976, when defendant left the marital home following an altercation between the parties.

On January 27, 1976 the present suit was filed and on the same date a temporary injunction issued, without notice or bond, for "good cause shown," restraining and enjoining defendant from: locking plaintiff out of the marital residence, removing property therefrom, beating, striking, abusing, molesting and threatening or in any manner interfering or attempting to interfere with plaintiff, among other provisions. On February 3, 1977, plaintiff filed a petition alleging defendant's violation of the injunction and on that date an order was entered finding defendant in contempt of court for violating the January injunctive order and further directing that plaintiff be given temporary custody of the minor children and exclusive possession of the marital home. Following numerous

petitions and counterpetitions, the cause eventually came on for trial as a contested matter with extensive evidentiary hearings held on May 17 and 18, 1977.

This opinion will not be unduly extended by cataloging each of the instances identified by plaintiff in support of her complaint for divorce. The record supports the conclusions that defendant promulgated public and private insults, was guilty of physical abuse, psychological harassment and caused plaintiff embarrassment and humiliation before family, friends and strangers. The bulk of the abusive acts directed by defendant toward plaintiff occurred in the period of time within a year of the filing of the divorce action, with others predating that period.

Defendant called no witnesses on his own behalf and at the close of plaintiff's case moved for a directed verdict. The cause was continued for the purpose of giving plaintiff time within which to respond to said motion. On the subsequent trial date, May 20, 1977, the parties presented to the court an oral settlement agreement, on the basis of which defendant withdrew his motion as well as his defense, declining to further contest the divorce. The oral settlement agreement was read into the record by plaintiff through her counsel and confirmed by defendant through his. The court then examined the parties themselves independently as to their understanding and acceptance of the agreement, establishing that it was reached as a result of negotiations among the parties and their respective attorneys. Thereafter, on August 16, 1977, following further months' long negotiations, again among the parties and their attorneys, an addendum to the judgment for divorce was entered embodying certain corrections and additional terms of an agreement as well as visitation rights established by the court with respect to the husband.

Defendant filed his notice of appeal from the judgment of divorce entered on August 16, 1977. On October 25, 1977, this court permitted the filing of a late notice of appeal.

Defendant argues that the acts of which plaintiff complains did not comprise a course of conduct sufficient to rise to the level of extreme and repeated mental cruelty; that plaintiff's proofs failed to establish that these facts resulted in an adverse effect upon her physical or mental health; and that plaintiff's case lacked the requisite proof demonstrating an absence of provocation on plaintiff's part with respect to the acts in question.

The record reveals the following episodes: on two occasions, defendant physically struck plaintiff, knocking her down and her glasses off, without provocation; he often shouted abusively at her, sometimes in the presence of others; he told her that he wished he weren't married to her and didn't love her; he related intimate details of their marriage on the telephone to an unidentified listener; he refused to help her maintain the household when she was ill and after surgery, and verbally abused her for

asking him for aid because he believed she was "faking illness"; he demanded that she turn over to him all the money or other assets she possessed for his control and use, or else he would declare "war" upon her, sue her for divorce, and cause her to expend all her funds on attorney's fees and costs of litigation. Testimony corroborating certain of the foregoing incidents was supplied by plaintiff's sister and daughter.

In relation to a number of the aforementioned litany of incidents, plaintiff testified as to her lack of provocation of the behavior about which she complained. In regard to most of the instances, plaintiff testified that she experienced very negative emotional and physical conditions, including shock, fear, nervousness, depression, anxiety, loss of weight, crying, nausea and feelings of abandonment and despair, either directly as a result of defendant's behavior or shortly thereafter, without comment expressly as to cause. Defendant, having offered no defense to plaintiff's evidence, created little issue with respect to the credibility of witnesses.

A case closely paralleling the facts obtaining in the instant case is *McCarrel v. McCarrel* (1977), 48 Ill. App. 3d 666, 363 N.E.2d 198. There the court upheld a finding of mental cruelty, as we do here, in the following terms (48 Ill. App. 3d 666, 668):

> "The parties were married September 3, 1968. Evidence was presented that thereafter plaintiff committed several unprovoked physical acts of cruelty upon defendant, once breaking her jaw. Evidence was also presented of threats he made to her and of scurrilous remarks he made about her in the presence of others. At the times of many of these acts and remarks, he was said to be intoxicated. Some evidence was also presented of his failure to support her. Such conduct would obviously cause her embarrassment, humiliation and anguish. Because of the repetition of this conduct, the trial court could have determined that, in toto, this conduct made defendant's life miserable and unendurable."

Defendant also urges deficiency in the proofs as to his conduct having affected plaintiff's mental or physical health, asserting that no causal relationship between defendant's conduct and plaintiff's depression has been demonstrated, nor any substantive evidence that plaintiff's depression and nausea were caused by defendant rather than plaintiff's physical problems. The record demonstrates the contrary. The connection between defendant's conduct and plaintiff's negative physical or mental reaction was made explicit at several points in the record.

Without reference to any authority, defendant claims that unless the causal connection between allegedly mentally cruel behavior and injury is so obvious that a layman can understand the relationship, a claimant must produce an expert witness to show that one was caused by the other. It

has been held that medical evidence of mental cruelty is not necessary in every case. (*Smith v. Smith* (1977), 47 Ill. App. 3d 583, 362 N.E.2d 123; *Harry v. Harry* (1976), 38 Ill. App. 3d 776, 349 N.E.2d 69; *Loveless v. Loveless* (1970), 128 Ill. App. 2d 297, 261 N.E.2d 732.) Nor is corroboration on this point necessary in a contested divorce proceeding, as the instant case was until after the close of plaintiff's evidence; the testimony of plaintiff is enough if it is sufficiently credible in the light of all the evidence to warrant acceptance by a reasonable person. *Surratt v. Surratt* (1957), 12 Ill. 2d 21, 145 N.E.2d 594; *Bilsky v. Bilsky* (1974), 18 Ill. App. 3d 329, 309 N.E.2d 697; *Varap v. Varap* (1966), 76 Ill. App. 2d 402, 222 N.E.2d 77.

■■■■ Defendant also seeks reversal upon the allegation that plaintiff has not proved her lack of provocation of the acts of which she complains. Proof of lack of provocation is an essential part of plaintiff's case; defendant is not required to plead or prove it as an affirmative defense. (*Hecht v. Hecht* (1977), 49 Ill. App. 3d 334, 364 N.E.2d 330; *Rosenbaum v. Rosenbaum* (1976), 38 Ill. App. 3d 1, 349 N.E.2d 73.) In *Hecht*, however, the court clarifies this issue as follows (49 Ill. App. 3d 334, 340):

> "While the burden of proving lack of provocation remains at all times with the complaining party, *the burden of going forward shifts to the defendant party once there has been a denial, explicit or implicit * * * that the actions were provoked. This is true even if the defending party has denied in the answer that the actions were not provoked.*" (Emphasis added.)

Applying this principle to the facts before us, we find explicit denials of provocation on her part with respect to instances of defendant's conduct. Further, there is sufficiently pervasive throughout plaintiff's testimony a sense of shock, anger and incomprehension in the face of defendant's behavior toward her. The presence of her sense of bewilderment, often explicitly referred to in the testimony, plainly suggests that she had given defendant no cause or provocation for committing the acts that seemed often to take her by surprise.

In *Stanard v. Stanard* (1969), 108 Ill. App. 2d 240, 247 N.E.2d 438, and *Rosenbaum v. Rosenbaum*, upon which defendant relies, there was positive evidence of provocation. In the instant case, no such evidence appears and defendant declined to present any. (See *Hanson v. Hanson* (1977), 44 Ill. App. 3d 889, 358 N.E.2d 967.) Defendant also seeks support from *Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 321 N.E.2d 122; however, in that case the court noted a total absence of evidence in regard to lack of provocation, unlike the situation prevailing in the instant case.

With respect to the second principal issue, defendant argues that there are glaring discrepancies between the settlement agreement and the

judgment for divorce as amended following a supplementary hearing, despite the approval of the judgment by counsel for both plaintiff and defendant, as well as by the trial judge. Defendant refers to six alleged variances, which he concedes were not brought to the attention of the trial court at the supplementary hearing resulting in the addendum to the judgment for divorce. We have examined the alleged discrepancies and find several to be of such a minor character as to border on the frivolous, and others to be insubstantial. The rule with respect to such disparities between the initial agreement and the terms of the final judgment was considered in *Filko v. Filko* (1970), 127 Ill. App. 2d 10, 25, 262 N.E.2d 88, 95-96, as follows:

> "On the basis of our examination of the record, we do not believe the plaintiff has shown any substantial variance between the terms of the decree and her oral agreement and testimony. The trial court in the instant case based the decree on the oral agreement and stipulation and testimony by parties in open court. The parties are bound by such stipulations unless it can be shown that the stipulations were unreasonable or resulted from fraud. The court will uphold such agreement."

Again, in *Filko* (127 Ill. App. 2d 10, 26):

> "The stipulation in the present case was fair and there was no showing of any fraud. In the absence of showing that her previous attorney was not properly representing her, it is certainly clear from the record that such representation was proper in all respects and that the decree of the trial judge should be affirmed. The stipulation was voluntary, valid, binding and enforceable. In the words expressed in the Moss case, supra, 'There must be a point of no return—a moment of finality—in all litigations.' This case is no exception."

To the same effect are *Hellige v. Hellige* (1977), 50 Ill. App. 3d 209, 365 N.E.2d 220; *Chodl v. Chodl* (1976), 37 Ill. App. 3d 52, 344 N.E.2d 711; *Gaddis v. Gaddis* (1974), 20 Ill. App. 3d 267, 314 N.E.2d 627. In *Gaddis*, the court held that once an agreement is embodied in a divorce decree, its terms will not thereafter be modified under any circumstances except fraud, coercion or contrariness to public policy, all of which are absent from the instant case.

■■ Defendant was represented by able counsel who actively participated on defendant's behalf at every stage of the litigation. Defendant was present at the hearings at which the oral property settlement agreement came to pass. At the August 15, 1977, hearing, at which defendant was present, the court considered certain proposed discrepancies between the oral stipulation and the embodiment thereof in the decree for divorce. Parenthetically, it should be noted that none of the

discrepancies claimed on appeal were raised at this hearing. The court suggested that the parties confer further and the case was called again, at which time the parties presented proposed changes which the court approved and which were incorporated in the addendum to the judgment for divorce entered by the court on August 16, 1977, to which counsel for each of the parties agreed in writing. Defendant was thus afforded every opportunity to withdraw from his agreement to the order of May 20 as well as the order of August 16. Having then failed to take advantage of these opportunities, he will not be heard to complain at this late stage of the contents of the respective orders.

Accordingly, the judgment of the trial court will be affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.