Vivian A. Jackson, Plaintiff-Appellee, *v.* William A. Jackson, Defendant-Appellant.

(No. 73-255; ▮▮▮▮▮▮▮▮)

Third District—December 30, 1974.

Theodore R. Sherwin, of Sherwin & Sherwin, of Chicago, for appellant.

Dean J. Sadaro, of Oak Park, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant, William Jackson, appeals from the decree of the circuit court of Will County which found that Jackson was guilty of mental cruelty toward plaintiff, Vivian A. Jackson, as a ground for divorce. The bench trial, on stipulation of the parties, was held only on the issue of whether grounds for divorce existed. The appeal is on the issue alone of whether the conclusion of the trial court is correct, that a ground of mental cruelty existed by reason of the treatment by defendant Jackson of his wife, Vivian.

The complaint made allegations of physical and mental cruelty, but the trial court found that certain of the mental cruelty allegations and none of the allegations concerning physical cruelty were sustained by the evidence. The finding of mental cruelty for divorce was based principally on defendant William A. Jackson's continued, though nonadulterous, relationship with one Janice Webb, a patient of defendant, who is a physician. During the association of defendant with Janice Webb, the record indicates he was away from home very frequently until early morning hours. He was found to have overly dominated his wife, plaintiff, Vivian A. Jackson, in financial and other marital affairs during this period of time. He also refused to explain his late absences to his wife, and it was shown that the continuous late absences from home caused his wife, with a newborn child, extreme mental distress.

Plaintiff Vivian Jackson filed a complaint for divorce in Cook County on June 29, 1971. Two weeks later the case was transferred to Will County by reason of improper venue. That complaint remained pending until October 13, 1971, when plaintiff took a voluntary nonsuit and thereafter filed the complaint in the instant case. The complaint for divorce alleged both physical and mental cruelty. The facts which were presented are contained in many volumes of transcript and will not be summarized in detail in this opinion.

Defendant is a physician and plaintiff is a physical therapist. They were married in January 1963. They lived in Park Forest and were both extremely active socially. Defendant operated two clinics, and plaintiff took care of most of the record keeping and the financial work for the clinics and the family. The couple attended many parties and were active in many social and community organizations. Defendant, in particular, was involved intimately with the operation of Prairie State Junior College. Plaintiff took an interest in the activities of defendant and participated in many of her own. The family prospered financially. They built an addition to their home and took numerous vacations and trips

together. In November of 1969, defendant began treating Janice Webb at his clinic. He saw her professionally some 8 to 10 times and testified that he did not see her after May 1970. During this time, defendant testified for Janice Webb in her divorce proceeding in his capacity as a physician.

Plaintiff testified that, beginning about November 1969, defendant spent many nights away from home and often did not return until 3 A.M. or later. She testified that she wrote down on a calendar every night the time of his return, and her lists which were admitted into evidence were very extensive. Defendant explained that some of the absences were due to late meetings involving the various community organizations in which he participated.

A child was born to the parties in January 1970. Plaintiff stated that defendant did not continue the frequent late-night absences from then until he began staying out late again in November of 1973. Plaintiff testified that defendant refused to explain the continuous absences and late returns to the home. At defendant's insistence, both parties signed what is apparently an addition to a marriage contract in which they agreed that neither party would interfere with, nag or otherwise disturb or bother the professional, social, personal, and civic affairs of the other. Plaintiff also testified that defendant often cut off her money for household expenses, took away her gasoline credit card, let air out of her tires, pushed her out of bed, demeaned her sexual adequacy and commented on her unfavorably in comparison with white women. Plaintiff and defendant are both Negroes. Plaintiff testified that, during this time, she was very nervous and suffered emotional stress, although she did not seek the assistance of a doctor.

■■ On appeal in this court, defendant contends that the finding of the trial court was against the manifest weight of the evidence and that there was inadequate evidence to support the decree. The trial court found that there was no physical cruelty but that there was mental cruelty, arising as a result of the maintenance of the association with Janice Webb, even though the relationship was not adulterous, and by reason of the fact that, during such period of association, defendant frequently stayed away from home at night and refused to explain his absences to his wife. The circumstance that the parties had a young child only 1½ years of age, attended by plaintiff at the time the complaint was filed, together with defendant's constant late absences from home, caused the wife-plaintiff considerable distress.

On the basis of the record and the fact that the trial court had ample opportunity to observe the witnesses and determine the credibility of such witnesses, we do not believe that this court would be justified in

concluding that the trial court erred in finding there was a mental-cruelty basis for divorce in the record in this cause. Defendant also contends that the court erred in allowing plaintiff to testify that she had a disturbance and nervous tension. Plaintiff testified that she, as a physical therapist, had analyzed her own condition with respect to her marital relationship and recognized her disturbance and nervous tension. Plaintiff merely testified, as any lay person may do, that she suffered from a disturbance and from nervous tension. The trial court could clearly assess the value of this testimony and determine what if any bearing it had upon the issues before the court.

■■ It is also contended that the court erred in refusing to allow the testimony of plaintiff's obstetrician concerning plaintiff's physical and mental condition. The obstetrician, Dr. Karasch, was excluded on the ground of physician-patient privilege. Plaintiff points out that the court found against her on the allegations of physical cruelty and found no physical impairment whatsoever, and thus the failure to admit the testimony of Dr. Karasch as to plaintiff's physical condition could not be prejudicial to defendant. While there may have been error in the refusal to permit the testimony of Dr. Karasch, such error appears to be harmless and nonprejudicial, in view of the voluminous record in the case from which the trial court determined the issue.

■■ Defendant also contends that the court erred in admitting certain of plaintiff's exhibits as "past recollections recorded." Plaintiff had testified at the trial that defendant developed a habit of continuously returning home at odd hours in the morning. She recorded the time of his return on the calendar, and these notations were transferred later to pocket calendars. While she could not, solely through her memory, recall all the times and dates of defendant's late homecomings, she could use the pocket calendars to jog her memory. The calendars were sufficiently shown to be accurate records of the facts therein noted and could be properly admitted in evidence in the bench trial, in view of the issues in the case.

■■ It is further objected that the court erred in not finding a condonation on part of plaintiff in that the parties lived together after the alleged acts complained of. This is tied into the argument that the mental cruelty was limited to the period between November 1969 and May 1970. There is, however, no indication that the trial court so limited the time for its findings, and plaintiff's record of defendant's late returns to the home actually extended through June 29, 1971, the day she filed the initial divorce complaint. Plaintiff denied having sexual relations with defendant, and, even if she did have them, this does not show condonation on the facts in this case. (*Deahl v. Deahl*, 13 Ill.App.3d 150.) It is clear

that the affirmative defense of condonation was not adequately shown by defendant in this cause.

■■ A final contention is made by defendant that plaintiff was sufficiently at fault herself to justify denying her a divorce. Defendant contends that plaintiff ignored him and refused to go on trips with him and that she made false allegations in her complaints of adultery, physical cruelty and several types of mental cruelty. Defendant concludes from these assertions that plaintiff was sufficiently at fault to justify denial of her complaint for divorce. The allegations of the complaint in the cause were not shown to have been made as deliberate false accusations. The trial court apparently found that any of the conduct on part of plaintiff, complained of by defendant, was in response to defendant's mental cruelty and conduct. We note that there was evidence of one instance, after the divorce proceedings had been filed, when defendant apparently pushed her out of bed and may himself have withheld love and affection from plaintiff. Accordingly, we find no support for defendant's contention that plaintiff's fault barred her from a finding in her favor on the issue of mental cruelty.

Since the trial court had the opportunity to view the witnesses and to evaluate the credibility of the witnesses, we do not feel that we would be authorized to reject the court's finding in the light of the record in this case. The judgment of the Circuit Court of Will County is, therefore, affirmed.

Affirmed.

STOUDER, P. J., and DIXON, J., concur.