*In re* MARRIAGE OF JOYCE ANN NILSSON, Petitioner-Appellee, and LORING R. NILSSON, Respondent-Appellant.

Third District   No. 78-473

Opinion filed March 12, 1980.

Dan H. McNeal, of Moline, and Dorothea O'Dean, of Rock Island, for appellant.

Peter H. Lousberg, of Rock Island, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Joyce Ann Nilsson, the petitioner-appellee herein, filed her petition for dissolution of marriage on May 8, 1978, alleging as the grounds therefore that Loring R. Nilsson, the respondent-appellant, without cause or provocation by the petitioner, had been guilty of extreme and repeated mental cruelty. A trial on the merits testing the grounds for dissolution of the marriage was held and subsequently on October 18, 1978, the Circuit Court of Rock Island County entered a judgment dissolving the marriage. The parties could not agree on matters of property division, child custody, child support, and maintenance and accordingly a hearing on these matters incident to the marriage was not conducted at that time. (Ill. Rev. Stat. 1977, ch. 40, par. 403(e).) Prior to the continued hearing on the second stage of the bifurcated contested trial, the respondent-appellant, Loring R. Nilsson, filed a notice of appeal from the trial court's order dissolving the marriage. After the notice of appeal was filed appellee filed a motion to dismiss the appeal or alternatively requested that we order the trial court to proceed with the second part of the bifurcated proceeding. Although we denied the motion to dismiss the appeal, we did order continued hearings in the trial court to proceed with reasonable dispatch.

Appellant has raised only one issue for review:

"Did the Trial Court err in entering a Judgment for Dissolution of Marriage on October 18, 1978, on the grounds that without cause or provocation by the Petitioner, the Respondent has been guilty of Mental Cruelty toward the Petitioner."

However, prior to considering the merits of this appeal, we must decide a preliminary issue raised by the petitioner-appellee challenging the jurisdiction of the appellate court to hear this controversy. It has been vigorously argued that this appeal from the order dissolving the marriage after the first phase of this bifurcated contested trial is not a final order and consequently not appealable. The trial court in the order appealed from determined that sufficient grounds existed to dissolve this marriage but did not immediately proceed to determine the other important matter of the various rights incident to the marriage because of mandatory bifurcation required by the Illinois Marriage and Dissolution of Marriage Act when the parties failed to enter into a settlement agreement on these additional matters. (Ill. Rev. Stat. 1977, ch. 40, par. 403(e).) Consistent with section 401(3) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 401(3)), after the judgment dissolving the marriage was entered, the trial court reserved ruling on the questions of property apportionment, mainte-nance, child support, child custody, educational expenses, attorney's fees and expenses, and expressly retained jurisdiction for the purpose of

disposing of those subject matters of the case. Further, the trial court in an exercise of its discretion continued the case for the determination of those incidental matters. The trial court's order particularly provided in part:

"The parties have not entered into a Separation Agreement; this Court has heard all matters pertaining to the question of dissolution; the jurisdiction of the Court of the 14th Judicial Circuit should be retained for purposes of hearing evidence on question of property apportionment, maintenance, child custody, child support, educational expenses and attorney's fees and expenses. The balance of the bifurcated hearing may be heard by a judge other than the undersigned. The Temporary Order for maintenance, child support and exclusive possession of the marital home should continue until the further Order of the Court. IT IS FURTHER FOUND, pursuant to Illinois Supreme Court Rule 304, this is a Final Order and that there is no just reason for delaying the enforcement of this Order or for delaying appeal."

In support of her argument that the dissolution order is not final the appellee relies on section 401 of the Illinois Marriage and Dissolution of Marriage Act, which provides in part:

"Such judgment shall not be entered unless, to the extent it has jurisdiction to do so, the court has considered, approved, reserved or made provision for child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property." Ill. Rev. Stat. 1977, ch. 40, par. 401(3).

■■ The appellee argues that the language "to the extent it has jurisdiction to do so" and "reserved" does not pertain to the present case. She contends that such language pertains to the situation where the trial court may only have limited personal jurisdiction, such as no personal jurisdiction over one party, and is therefore unable to enter orders of support, maintenance and property disposition against said absent party. In such a situation the reservation of those issues is proper until personal jurisdiction over the absent party can be obtained with the judgment of dissolution nonetheless still being a final order on the issue determined therein. The appellee claims the present case does not fit that situation where as here there is full personal jurisdiction over all parties. She contends that reserving the remaining questions of maintenance, support, and property disposition in the present factual situation was not contemplated by the statute. We agree. In the recent case of *Lentz v. Lentz* (1979), 73 Ill. App. 3d 93, 391 N.E.2d 582,[1] it was reasoned in

---

[1] The case of *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, ___N.E.2d ___, was argued before the Illinois Supreme Court on January 24, 1980, and taken under advisement. We await the decision with interest.

examining section 401(3) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 401(3)) that a judgment of dissolution of marriage disposes of all the issues of the case, including grounds for dissolution as well as child custody and support, maintenance, and property disposition, is appealable as a matter of constitutional right. (Ill. Const. 1970, art. VI, §§6 and 16.) In the *Lentz* case the court further theorized that judgments in dissolution of marriage cases which reserve any pending claims for custody, maintenance, or property disposition are not final orders appealable as a matter of constitutional right but are appealable only if a supreme court rule makes them appealable. Accordingly, we conclude that the judgment appealed from in the present appeal which reserves other issues and claims between the husband and wife in this dissolution of marriage case is not appealable as a matter of constitutional right.

We next consider section 413(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 413(a)), which arguably provides that the judgment of legal dissolution of marriage is final:

> "(a) A judgment of dissolution of marriage or of legal separation or of declaration of invalidity of marriage is final when entered, subject to the right of appeal. An appeal from the judgment of dissolution of marriage that does not challenge the finding as to grounds does not delay the finality of that provision of the judgment which dissolves the marriage, beyond the time for appealing from that provision, and either of the parties may remarry pending appeal. An order directing payment of money for support or maintenance of the spouse or the minor child or children shall not be suspended or the execution thereof stayed pending the appeal." Ill. Rev. Stat. 1977, ch. 40, par. 413(a).

The above section of the Illinois Marriage and Dissolution of Marriage Act was construed in the case of *Lentz* to be constitutional. The *Lentz* court construed section 413(a) of the Act, and specifically the phrase "subject to the right of appeal," to mean not that the judgment of dissolution is appealable as a matter of right but that said judgment is subject to whatever right of appeal is available from an order of that nature.

Supreme Court Rule 304(a) provides the authority and procedure in appealing from final judgments that do not dispose of an entire proceeding. (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a).) Consistent with Supreme Court Rule 304(a), where there are multiple claims for relief in a particular case, an appeal may be taken from a final judgment as to one but fewer than all of the claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. Such a finding was made in the case at bar. Therefore, the issue

we must decide is whether the judgment dissolving the marriage was final in that it completely disposed of that separable claim of the parties to this litigation.

In the *Lentz* case the court also was faced with the identical issue of appellate jurisdiction before us and there held that the appellate court was without jurisdiction in an appeal from an order dissolving a marriage but reserving the related matter of child custody, support, maintenance, and property disposition, in the absence of an express finding by the trial court that there was no just reason to delay enforcement or appeal pursuant to Supreme Court Rule 304(a). Although the *Lentz* case turned on the absence of compliance with Supreme Court Rule 304(a), the court by implication found that the judgment of dissolution of marriage with reservation of related issues was nonetheless final as to the issue of the grounds for the dissolution. We believe the judgment appealed from in the case at bar is final for purposes of being appealable pursuant to Supreme Court Rule 304(a). "[O]nly an order which terminates the litigation on the merits so that, if affirmed, the trial court has only to proceed with execution is a final order." (*Myers v. Myers* (1977), 51 Ill. App. 3d 830, 837, 366 N.E.2d 1114, 1121.) The judgment of dissolution of the Nilsson marriage terminated the dispute between the litigants with regard to the claim of the existence of sufficient statutory grounds for dissolution of a marriage. If affirmed, no further action on the part of the trial court is necessary on the claim for dissolution of the marriage except to proceed with execution.

As did the court in the *Lentz* case we recognize the possible conflict between section 413 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 413) and Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)) and article IV, section 16 of the 1970 Illinois Constitution, when the legislature attempts to regulate finality of judgments and other aspects of appellate procedure in dissolution of marriage cases despite the well-established primacy of the supreme court and supreme court rules in this area. (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495.) We believe our construction of section 413(a) of the Illinois Marriage and Dissolution of Marriage Act is consistent with and complements Supreme Court Rule 304(a). Our construction of the statute does not oppose the supremacy of the supreme court rules over legislative enactment.

■■ That the judgment in the case at bar is final for purposes of the application of Supreme Court Rule 304(a) is amply supported by case law. The test of finality of a judgment order lies in the substance and not the form of the order. A decree dissolving the marital status of the parties terminates the litigation on its merits and is final so long as all that remains to be done is execution of the judgment order. (*West v. West* (1978), 62 Ill. App. 3d 963, 390 N.E.2d 880; *Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376

N.E.2d 782; *Myers v. Myers* (1977), 51 Ill. App. 3d 830, 366 N.E.2d 1114.) A simple inclusion of the special finding of no just reason for delaying enforcement or appeal pursuant to Supreme Court Rule 304(a) in a trial court's order cannot confer appellate jurisdiction if the order is in fact not final. (*Smith v. Interstate Fire & Casualty Co.* (1977), 47 Ill. App. 3d 555, 362 N.E.2d 38.) Such is not the case in the present appeal, where we conclude that the judgment dissolving the Nilsson marriage is final for purposes of Supreme Court Rule 304(a).

Having determined that we possess the requisite jurisdiction of this appeal, we conclude that it should not be dismissed as the petitioner, Joyce Nilsson, urges.

We next proceed to a decision on the merits of the issue raised in this appeal. The respondent-appellant argues that the order dissolving the Nilssons' marriage based on a finding of the respondent-husband's mental cruelty is against the manifest weight of the evidence. Whether the record supports the trial judge's conclusion that the petitioner produced sufficient evidence to prove that her husband had been guilty of conduct that constituted unprovoked extreme and repeated mental cruelty is the question before us. Because this issue causes us to determine whether the manifest weight of the evidence supports the petitioner's allegations of extreme and repeated mental cruelty, a summary of the relevant facts as presented to the trial court will be necessary.

In *Quilty v. Quilty* (1972), 5 Ill. App. 3d 801, 803, 284 N.E.2d 690, 691, we stated the accepted definition of extreme and repeated mental cruelty as: " '[I]t is generally recognized that the elements consist of a course of abusive and humiliating treatment, calculated or obviously of a nature to torture, discommode, or render miserable the life of the opposite spouse; and which actually affects the physical or mental health of such spouse' " (quoting from *Howison v. Howison* (1970), 128 Ill. App. 2d 377, 382, 262 N.E.2d 1, 3). (Accord, *Graf v. Graf* (1979), 71 Ill. App. 3d 496, 389 N.E.2d 1206.) The facts of the particular case must be considered in light of the parties' pattern of conduct, their respective emotional makeup, and the circumstances under which the complained-of conduct occurred. (*Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.) The respondent's conduct in this case must cause the petitioner embarrassment, humiliation and anguish which rendered her life miserable and unendurable. The ultimate test, then, is whether the conduct complained of had the required adverse effect upon the physical or mental health of the complaining party. (*Rosenbaum v. Rosenbaum* (1976), 38 Ill. App. 3d 1, 349 N.E.2d 73.) We conclude that the evidence adduced at the trial of this case amply supports the judgment dissolving the Nilsson marriage based upon adequate proof of unprovoked mental cruelty of the respondent.

The testimony shows that the parties were married on June 23, 1971, and that a male child was born to the marriage on August 23, 1977. The parties separated on April 4, 1978, and the dissolution litigation then followed. The respondent-husband is a school psychologist who admitted analyzing himself to the extent of developing depression known as "student's disease" while a psychology student. The petitioner-wife was herself a college graduate. She testified to a variety of conduct by the respondent which she asserted constituted mental cruelty. Respondent had allegedly struck her on one occasion. He had analyzed her in front of other people, causing her embarrassment. Petitioner testified that her husband had criticized her walk, her dress, her talk, the way she stood, her conversations and her housekeeping on multiple occasions and in front of others. The respondent allegedly accused his wife of having a learning disability and many times berated her publicly by causing her to attempt to recite the multiplication tables knowing she had difficulty with them. Petitioner reported that her husband had steadily increased his consumption of alcohol during the course of the marriage and came home drunk on many occasions, going straight to bed and stating he was too tired for sex or just didn't feel like it. She stated that the respondent was impotent during his depression in 1975. The respondent had also accused the petitioner of being frigid. On one occasion while making such an accusation he showed his mother-in-law a sexual manual entitled "The Joy of Sex" and told her that his wife needed to read it. There was also testimony that the respondent's parents stayed and visited with the petitioner and respondent for extended periods which greatly upset the petitioner.

The conduct the petitioner complained of was substantiated in great detail by other witnesses who testified. The respondent himself admitted some of the conduct and did not categorically deny the majority of the complained-of conduct. Both the petitioner and her mother testified to the effect of the alleged mental cruelty on the petitioner's health. After the birth of the child the petitioner suffered from post-partum blues. The petitioner was depressed, cried, and became nervous. Her mother testified that when the respondent ridiculed the petitioner in front of other people about her learning disability or her sexual performance, the petitioner actually cringed. A sister-in-law of the petitioner, Mrs. McBride, testified to observing changes in the petitioner as the result of the respondent's conduct. She recalled that the petitioner was outgoing when she first knew her, but during the course of the marriage the petitioner had become withdrawn, was very hard to communicate with, and was constantly fidgeting. During this period the petitioner had headaches, visited a doctor who prescribed medication which she threw away. Petitioner also testified that the respondent's drinking habits caused

her to become nervous, upset, and withdrawn. The respondent obtained medication from his friend and psychologist colleague, Dan Woodward, which petitioner took for awhile at respondent's suggestion but stopped when she could not sleep and became sick and achy. The petitioner had discussed marriage counseling with the respondent but he refused to participate.

The record in the case before us manifestly supports the finding that unprovoked extreme and repeated mental cruelty was established. The conduct of the respondent was indeed such as to cause the petitioner embarrassment, humiliation, and anguish. It is apparent the conduct complained of had an adverse effect upon the petitioner's physical and mental health. Both the conduct constituting the mental cruelty and the adverse effect on the other spouse's health must be considered in light of the overall facts of the marriage and the emotional makeup of the parties. (*Rosenbaum v. Rosenbaum* (1976), 38 Ill. App. 3d 1, 349 N.E.2d 73.) The trial court is in a far superior position to do this than the court of review. Likewise, credibility of the witnesses is also best determined by the trial court. (*Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.) Under similar facts a finding of mental cruelty has been upheld on appeal. (*Morris v. Morris* (1979), 70 Ill. App. 3d 125, 388 N.E.2d 129; *McCarrel v. McCarrel* (1977), 48 Ill. App. 3d 666, 363 N.E.2d 198; *Jackson v. Jackson* (1974), 24 Ill. App. 3d 810, 321 N.E.2d 506.) We believe those cases are controlling. The test of the sufficiency of the complaining party's evidence of grounds for dissolution of the marriage is whether that evidence establishes a preponderance in light of the opposing evidence. (*Harry v. Harry* (1976), 38 Ill. App. 3d 776, 349 N.E.2d 69.) Even uncorroborated testimony of the complaining party of acts of mental cruelty has been held to sufficiently establish grounds for dissolving a marriage where that testimony is credible. (*Bilsky v. Bilsky* (1974), 18 Ill. App. 3d 329, 309 N.E.2d 697.) Because the credibility of witnesses and the weight to be accorded the conflicting testimony are best determined by the trial court, we will not reverse the trial court's finding here, in light of our decision that such finding is not against the manifest weight of the evidence.

Judgment affirmed.

STOUDER, P. J., and SCOTT, J., concur.