BRIAN W. HOLLO, Petitioner-Appellee, v. ANNA MARIE HOLLO, Respondent-Appellant.

Fifth District   No. 5—83—0749

Opinion filed January 29, 1985.

John P. Madden, of Gillespie, for appellant.

Denis McGrady, of McGrady & McGrady, of Gillespie, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Respondent, Anna Marie Hollo, appeals from a judgment entered by the circuit court of Montgomery County dissolving the second marriage of respondent and petitioner, Brian W. Hollo.

The first marriage of the parties was dissolved on December 11, 1981. One child, Michael Brian Hollo, was born to the parties during their first marriage. The parties were remarried on June 25, 1982, and they separated on August 11, 1982, at which time respondent left the State with Michael to eventually take up residence in Leisure City, Florida. Petitioner commenced these proceedings on August 12, 1982, at which time both petitioner and respondent were 22 years old and Michael was 13 months old. Petitioner was employed as a correctional officer at the Graham Correctional Center in Hillsboro. Subsequent to their separation, respondent obtained employment as a

nurse's aide for Health Medical Systems in Miami, Florida.

The first issue raised by respondent's appeal is whether the trial court erred in finding that respondent had, without cause or provocation by the petitioner, been guilty of extreme and repeated mental cruelty. The court also awarded custody of Michael to petitioner. Respondent challenges this portion of the judgment on the grounds: (1) that the circuit court lacked the jurisdiction to make a child-custody determination; (2) that in awarding custody the circuit court failed properly to consider all the relevant factors contained in section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 602); (3) that the court's finding that it was in Michael's best interest that the child be placed in the custody of petitioner is against the manifest weight of the evidence; and (4) that the trial judge was prejudiced against her.

The trial proceedings were conducted on a bifurcated basis, with the grounds being tried first. The only evidence introduced at the hearing on the grounds was the testimony of petitioner and his mother. That evidence is undisputed. Petitioner testified that six days after their second wedding on June 25, 1982, respondent informed him that their marriage was a mistake and that she was going to leave him as soon as she was able to acquire enough money to obtain a divorce. He testified that she repeated this threat some 30 times before she finally did leave on August 11, 1982. Petitioner testified that since their separation neither party had spoken to the other. The respondent has a minor daughter by another father. Petitioner testified that respondent would repeatedly remind him of this fact, particularly when petitioner would attempt to discipline the child. Petitioner also stated that on one occasion three or four days prior to their separation, respondent struck him and then threatened to kill him while he slept. Petitioner testified that respondent's conduct caused him to feel helpless, with an uncomfortable anticipation but never the certainty of something happening.

The testimony of petitioner's mother corroborated most of what petitioner had said. In particular, she testified that respondent's conduct had caused her son to be "very, very nervous." She testified that he could not sit still for any period of time. Further, she stated that once the respondent left, her son's condition improved and he calmed down.

At the conclusion of petitioner's mother's examination, the trial judge stated that he had heard enough evidence. Respondent's counsel had previously indicated no witnesses would appear on her behalf. After hearing the arguments of counsel for both petitioner and re-

spondent, the circuit court found that, without cause or provocation by petitioner, respondent had been guilty of extreme and repeated mental cruelty. (Ill. Rev. Stat. 1983, ch. 40, par. 401(2).) At trial, and now again on appeal, respondent has argued that there was not sufficient evidence to support that finding.

■ Section 401 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 401) is authority for the circuit court to enter a judgment of dissolution of marriage if the court finds that, without cause or provocation by petitioner, respondent has been guilty of extreme and repeated mental cruelty. (Ill. Rev. Stat. 1983, ch. 40, par. 401(2).) The statute, however, provides no definition of mental cruelty. The reported decisions in cases where our courts have had occasion to consider the proof required to establish mental cruelty have employed such a variety of phraseology that we are drawn to the conclusion that a determination of whether given evidence constitutes proof of mental cruelty depends upon the particular circumstances present in each case. Furthermore, the assessment of these factors is best done by the circuit court. It is obvious to us that it is for this reason that great deference is given to circuit court findings as to the existence of the requisite mental cruelty, as in *In re Marriage of Burrows* (1984), 126 Ill. App. 3d 752, 467 N.E.2d 987, and *In re Marriage of Naguit* (1982), 104 Ill. App. 3d 709, 433 N.E.2d 296, or its absence, as in *In re Marriage of Rittmeyer* (1982), 107 Ill. App. 3d 892, 438 N.E.2d 237, and *In re Marriage of Semmler* (1980), 90 Ill. App. 3d 649, 413 N.E.2d 503.

■ Nevertheless, respondent urges that section 401 of the Illinois Marriage and Dissolution of Marriage Act requires the circuit court to refrain from entering a judgment of dissolution of marriage on the ground of mental cruelty unless the court finds that as a result of the conduct complained of the petitioner suffered actual tangible harm. None of the cases cited to us by respondent hold that suffering actual tangible harm is the *sine qua non* of mental cruelty. Indeed, had the courts made such a requirement, we would be hard pressed to then explain the results in cases such as *In re Marriage of Burrows* (1984), 126 Ill. App. 3d 752, 467 N.E.2d 987, *In re Marriage of Nilsson* (1980), 81 Ill. App. 3d 580, 402 N.E.2d 284, *Morris v. Morris* (1979), 70 Ill. App. 3d 125, 388 N.E.2d 129, *Jackson v. Jackson* (1974), 24 Ill. App. 3d 810, 321 N.E.2d 506, and *Hayes v. Hayes* (1969), 117 Ill. App. 2d 211, 254 N.E.2d 288. In each of these cases, under proof similar to the case now before us, a finding of mental cruelty was upheld on appeal. In these cases, both the conduct complained of as mental cruelty and the adverse effect thereof on the complaining spouse's

health were considered. In the case at bar, the respondent's conduct was of a nature to fall well within accepted definitions of mental cruelty. The circuit court was able to observe the petitioner and gauge the effect of respondent's conduct upon him and properly could have concluded that respondent's conduct had an adverse effect upon petitioner's mental health in spite of the absence of tangible physical harm. In view of the precedents of the above-cited cases, the trial court's finding of mental cruelty in the instant case was not against the manifest weight of the evidence.

■ We next address the first of the several challenges respondent directs against the circuit court's custody determination. Respondent's first claim is that the circuit court lacked the jurisdiction to make a custody determination. By virtue of section 601 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 601), section 4 of the Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1983, ch. 40, par. 2104) (hereinafter referred to as the UCCJA) governs jurisdiction of the court to make a child-custody determination. Little significant case law has developed under this section, and all of the cases respondent cites to this court are factually distinguishable. The law in force at the time these proceedings were commenced provided:

"(a) The circuit courts have jurisdiction to make a child custody determination by initial or modification judgment if:

1. this State

(i) is the home state of the child at the time of commencement of the proceeding, or

(ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

2. it is in the best interest of the child that a court of this State assume jurisdiction because

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

3. the child is physically present in this State and

(i) the child has been abandoned or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreat-

ment or abuse or is otherwise neglected or dependent; or

4. (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1., 2., or 3., or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and

(ii) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs 3. and 4. of subsection (a), physical presence in this State of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody." Ill. Rev. Stat. 1979, ch. 40, par. 2104.

The child over which this custody dispute centers was born to the parties in North Carolina on July 9, 1981, while petitioner was stationed there serving in the United States Marine Corps. In September of that year petitioner was discharged from the United States Marine Corps and returned to Illinois with respondent and their child. The parties' first marriage was dissolved in December of the same year, at which time respondent returned to North Carolina with the child. Respondent and the child returned to Illinois in May of 1982. Petitioner and respondent were subsequently married for the second time on June 25, 1982. The parties separated on August 11, 1982, at which time respondent and the child left Illinois and went to New York, then to North Carolina and finally took up residence with the respondent's mother in Florida on August 23, 1982. These proceedings were commenced by petitioner on August 12, 1982.

At the outset, we note that at the time these proceedings were commenced on August 12, 1982, no State qualified under section 4(a)(l)(i) of the UCCJA (Ill. Rev. Stat. 1983, ch. 40, par. 2104(a)(l)(i)) as the child's home State. Section 3.04 of the UCCJA defines the term "home state" and provides:

" 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned, however, periods of temporary absence of any of the named persons are counted as part of the 6-month or other period." (Ill. Rev. Stat. 1983, ch. 40, par. 2103.04.)

At the time these proceedings were commenced the child was 13 months old and had lived in both Illinois and North Carolina; however, he had not lived in either State for the six consecutive months necessary for either State to be considered his "home state." By now Florida may have achieved home State status; however, the respondent and the child did not take up residence in Florida until after the instant proceedings were commenced. Consequently, Florida had not acquired jurisdiction over Michael Brian at that time. Furthermore, none of the jurisdictional prerequisites set forth in paragraphs 1, 2, or 3 of subsection 4(a) of the UCCJA (Ill. Rev. Stat. 1983, ch. 40, pars. 2104(a)(1), (2) and (3)) may be said to exist regarding the State of North Carolina. We conclude, therefore, that only the circuit court of Montgomery County, Illinois, had jurisdiction to make the child custody determination. See Ill. Rev. Stat. 1983, ch. 40, par. 2104(a)(4).

Application of paragraph 2 subsection 4(a) of the UCCJA (Ill. Rev. Stat. 1983, ch. 40, par. 2104(a)(2)) dictates a similar conclusion. The child and both his parents have a significant connection with Illinois, all having resided, as opposed to having been merely present, within Illinois immediately prior to the commencement of these proceedings. (Ill. Rev. Stat. 1983, ch. 40, par. 2104(a)(2)(i).) Petitioner's continued residence in Illinois and the fact that he represents a potential custodian indicate that there is available within this State substantial evidence concerning the child's future care. (Ill. Rev. Stat. 1983, ch. 40, par. 2104(a)(2)(ii).) The fact that the child is no longer physically present within the State is not fatal to the circuit court's jurisdiction. Subsection 4(c) of the UCCJA states that the child's physical presence within the State is not required. (See Ill. Rev. Stat. 1983, ch. 40, par. 2104(c); compare Ill. Rev. Stat. 1983, ch. 40, par. 2104(a)(2)(i) ("significant connection") with Ill. Rev. Stat. 1983, ch. 40, par. 2104(a)(3) ("physically present").) We conclude, therefore, that the trial court had jurisdiction to make the instant custody determination.

■ Respondent next challenges the custody award by claiming that the circuit court failed to properly consider all the relevant factors contained in section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 602). We disagree. Section 602 provides:

"(a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child.

(b) The court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child." (Ill. Rev. Stat. 1983, ch. 40, par. 602.)

The record on appeal amply reveals that the circuit court thoroughly considered all the relevant factors, including those contained in section 602 of the Illinois Marriage and Dissolution of Marriage Act, in determining custody. Respondent bases her claim on the fact that nowhere in the record does the circuit court recite that it considered any of the relevant factors; however, section 602 does not require that any such specific findings or recitals be made. There is compliance with the Act where the record contains sufficient evidence concerning the specified factors. (*In re Marriage of Shedbalkar* (1981), 95 Ill. App. 3d 136, 138, 419 N.E.2d 409, 410; *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 623, 402 N.E.2d 831, 835-36.) The circuit court heard testimony from the petitioner and the respondent, from petitioner's supervisor and from the parties' friends, neighbors and relatives. That testimony included information concerning each of the factors listed in section 602, and in our opinion constitutes a sufficient basis for the circuit court's custody decision.

■ Of a somewhat related nature is respondent's claim that the circuit court erred by failing to order, *sua sponte*, an investigation and report concerning the custodial arrangements for the child although she made no request for the same. The authority to order such investigations is granted by section 605 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 605). Subsection (a) thereof provides in part: "In contested custody proceedings, and in other custody proceedings if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child." The use of the word "may" indicates that the exercise of this power is within the court's discretion. Thus, respondent's claim must be interpreted as an allegation that the circuit court abused its discretion in failing to order such an

investigation in the absence of a request by either party. In support of her position, respondent attempts to invoke the so-called "Muscarello Doctrine." That doctrine, as enunciated in *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 555, 170 N.E.2d 564, 569, provides: "The court has a duty to see that the rights of an infant are adequately protected, and is bound to notice substantial irregularities even though objections are not properly presented on its behalf." In the context of cases involving the custody of minor children this court has held that "[w]hen serious charges of neglect or abuse are addressed to the court, *** a duty devolves upon the court to satisfy itself that minor children who are its wards are being cared for in a proper manner and that they are not suffering neglect, abuse or privation." (*Layton v. Miller* (1975), 25 Ill. App. 3d 834, 838, 322 N.E.2d 484, 487.) We find nothing of record in the case now before us that would require a court to proceed *sua sponte* to cause an investigation to be made. Therefore, since respondent made no specific request for such an investigation, the circuit court's failure to order such an investigation was not an abuse of discretion.

Respondent also challenges the custody award by claiming that the circuit court's award was against the manifest weight of the evidence. In cases involving custody we are constrained to observe a strong and compelling presumption in favor of the result reached by the trial court. (See *In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 420 N.E.2d 555; *Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581.) The trial court is in a better position than a reviewing court to evaluate the credibility of the witnesses and the needs of the children in custody cases. (*In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 625, 402 N.E.2d 831, 836.) Thus, only where the custody award is contrary to the manifest weight of the evidence will it be reversed. (*In re Marriage of Yakin* (1982), 107 Ill. App. 3d 1103, 436 N.E.2d 573; *Soldner v. Soldner* (1979), 69 Ill. App. 3d 97, 386 N.E.2d 1153.) Of the several witnesses that did testify, not a single witness expressed an opinion that either party was an unfit parent. The record reveals that both parties were concerned for the welfare of their child and were able to properly raise him. Under these circumstances, we conclude that the trial court's decision was not against the manifest weight of the evidence.

The final error urged by respondent is that she did not receive a fair trial because the trial judge was prejudiced against her. However, we will not consider this issue, as it was not properly preserved for our review. Where any party fears that he or she will not receive a fair trial in the court in which the action is pending because

the judge is prejudiced against him or her, that party should seek a change of venue. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1001.) Respondent made no such request. Therefore, we deem the issue waived. See *Lannon v. Lamps* (1980), 80 Ill. App. 3d 318, 327, 399 N.E.2d 712, 718.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

JONES, P.J., and WELCH, J., concur.